UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRUNZIK SARGSYAN,<br><br>         Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>         Respondents. | Case No.: 25-CV-3857 JLS (JLB)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

  Presently before the Court is Frunzik Sargsyan's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court is Respondents Kristi Noem's (Secretary of the U.S. Department of Homeland Security), Pamela Bondi's (Attorney General of the United States), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Jesus Rocha's (Acting Field Director, San Diego Field Office), and Christopher LaRose's (Senior Warden of Otay Mesa Detention Center) (collectively, "Respondents") Response in Opposition to Petitioner's Habeas Petition ("Ret.," ECF No. 6), and Petitioner's Traverse ("Traverse," ECF No. 7). For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1).

/ / /

/ / /

## BACKGROUND

Petitioner, a citizen of Armenia, alleges that he has been detained by the United States Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") division at the Otay Mesa Detention Center since October 12, 2025. Pet. at 1. Petitioner entered the United States with his mother and brother in February 2020, was briefly detained, and then was released. *Id.* at 3. In July 2022, Petitioner was re-detained by ICE, and in January 2025, was ordered removed to Armenia. *Id.* An Immigration Judge granted him withholding of removal from Armenia, and ICE released Petitioner on an Order of Supervision. *Id.* Petitioner attended his ICE check-in appointments without incident. *Id.* On October 12, 2025, Petitioner was arrested by Border Patrol in San Diego, and on October 17, 2025, received a "Notice of Revocation of Release," which credited the revocation of his release to "a determination that there are changed circumstances in [his] case." *Id.* at 3–4. Petitioner now alleges that his detention violates his statutory and regulatory rights, *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Due Process Clause of the Fifth Amendment. *Id.* at 1–2.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

# JURISDICTION

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g). The Court disagrees. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. Rather, Petitioner is challenging "violations of ICE's mandatory duties under statutes, regulations, and the Constitution." Traverse at 3; *Constantinovici v. Bondi*, No. 25-cv-2405-RBM-AHG, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025) ("Petitioner challenges his present detention as unlawful, as well as the Government's authority to re-detain him under the post-removal detention statute without notice and an opportunity to respond. Accordingly, this Court has jurisdiction to consider Petitioner's claims."). Therefore, § 1252(g) does not strip the Court of jurisdiction. *See, e.g.*, *Phan v. Noem*, No. 25-cv-2422-RBM-MSB, 2025 WL 2898977, at *2–3 (S.D. Cal. Oct. 10, 2025) (finding the Court had jurisdiction in a similar matter); *Sun v. Noem*, No. 25-cv-2433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30,

2025) (same); *Van Tran v. Noem*, No. 25-cv-2334-JES-MSB, 2025 WL 2770623, at *2 (S.D. Cal. Sept. 29, 2025) (same).

## DISCUSSION

When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for ninety days (90) pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(1). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

Once ICE releases a non-citizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted). ICE may re-detain a non-citizen released on an Order of Supervision "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). ICE may also re-detain if the non-citizen "violates any of the conditions of release." § 241.13(i)(1). If ICE chooses to re-detain, the non-citizen must "be notified of

the reasons for revocation" and be afforded "an initial informal interview promptly after [his] return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). The non-citizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." *Id.*

Here, Petitioner was ordered removed in 2025 and granted withholding of removal to Armenia. Pet. at 3. Petitioner was thereafter released on an Order of Supervision, presumably, because his removal was not foreseeable. Ret. at 2; *see Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner was re-detained by ICE agents on October 12, 2025. Pet. at 1. The only notice Petitioner received regarding the reasons for his re-detention was a form revocation letter. Pet. at 3–4; *see also Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). This notice simply states that the revocation was "based on a review of your official alien file and a determination that there are changed circumstances in your case." *Id.* This plain statement is insufficient to provide notice. *See, e.g.*, *Xayakesone v. Noem*, No. 25-cv-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case"); *Rokhifirooz v. Larose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (same). Further, ICE did not conduct an interview immediately after detaining Petitioner, thus failing to provide him "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3); Ret. at 7.

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025)

(citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)) (finding a likelihood of success where petitioner was not provided an informal interview). "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). The Court finds that, in violation of ICE's regulations, the revocation of his supervised release without notice or an informed interview justifies **GRANTING** the Petition. *See, e.g.*, *Hoac*, 2025 WL 1993771, at *4 (granting a TRO where ICE failed to follow § 241.13(i)(3) procedures); *Phakeokoth v. Noem*, No. 25-cv-2817 RBM (SBC), 2025 WL 3124341, at *6 (S.D. Cal. Nov. 7, 2025) (same); *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 (same); *Tran*, 2025 WL 3005347, at *4 (granting a habeas petition on the same grounds); *Truong*, 2025 WL 2988357, at *6 (same); *Nguyen v. Noem*, No. 25-cv-2792 LL (VET), 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) (same).

Additionally, even if the procedural requirements were met, the Court is not persuaded that Respondents have shown a change in circumstances such that there is now a significant likelihood Petitioner will be removed in the reasonably foreseeable future. First, Petitioner has been subject to a final order of removal since January 2025, and in the last year, there has been no progress on securing his removal. Traverse at 4.

Second, Respondents failed to secure travel documents, or alleged potential for travel documents, for Petitioner *before* his re-detention. Petitioner was released because his removal was not reasonably foreseeable, *id.*, and Respondents present no evidence that this has changed. In fact, Petitioner was found to have a credible fear of returning to Armenia and granted withholding of removal. Pet. at 3. Respondents state that "ICE has worked as expeditiously as possible to locate a third country for resettlement and to effectuate Petitioner's removal to a third country." Ret. at 3. This is insufficient to demonstrate changed circumstances. *See Hoac*, 2025 WL 1993771, at *4 (rejecting the government's argument that ICE's intent to apply for travel documents constituted changed circumstances because they failed to provide "any details about why a travel document

1  could not be obtained in the past, nor have they attempted to show why obtaining a travel
2  document is more likely this time around").
3      Therefore, because Respondents have failed to follow their own regulations in re-
4  detaining Petitioner and have failed to demonstrate that his removal is reasonably
5  foreseeable, the Court **GRANTS** the Petition.

## CONCLUSION

7      Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas
8  Corpus (ECF No. 1).  The Court **ORDERS** Respondents to immediately release Petitioner
9  from custody subject to the conditions of his preexisting Order of Supervision.  The Court
10 **ORDERS** that Respondents cannot re-detain Petitioner without following the procedures
11 set out in 8 C.F.R. § 241.13(i) and other implementing regulations.  The Parties are
12 **ORDERED** to file a Joint Status Report by <u>January 16, 2026</u>, confirming that Petitioner
13 has been released.  The Clerk of Court **SHALL CLOSE** the file.
14     **IT IS SO ORDERED.**
15 Dated: January 13, 2026

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge